**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,      )
                                   )
            Plaintiff,         )
                                   )
                                   )
vs.                                 )     Case No.  CR-08-166-D
                                   )
ANTONIO DJUAN THOMPSON,     )
                                   )
          Defendant.     )

## ORDER AND JUDGMENT

I.  Background:

On October 14, 2008 the Court conducted a non-jury trial[1] on the charges set forth in the Indictment [Doc. No. 1] filed herein on July 1, 2008, in which Defendant is charged with knowingly possessing a firearm and ammunition after having been convicted of a felony, and with knowingly possessing marijuana.  Specifically, Count 1 of the Indictment alleges that:

On or about April 4, 2008, in the Western District of Oklahoma,

ANTONIO DJUAN THOMPSON,

having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm and  ammunition, to wit:

(1) one Ruger semi-automatic pistol, model # P85, with an altered serial number; and

(2) 13 rounds of 9mm ammunition, to wit: 12 rounds of CCI 9mm ammunition and one round of S&B 9mm ammunition,

which were in and affecting interstate commerce, in that said firearm and ammunition had previously crossed state lines to reach the state

---

[1]This case was originally set on the October 14, 2008 jury trial docket; however, on October 9, 2008, Defendant filed a Waiver of Jury Trial [Doc. No. 27] in which he requested a non-jury proceeding.  The Court conducted a hearing, concluded that Defendant's waiver was knowing and voluntary, and accepted the waiver.

of Oklahoma.

All in violation of Title 18, United States Code, Section 922(g)(1), the penalty for which is found at Title 18, United States Code, Section 924(a)(2).

Count 2 of the Indictment alleges that:

On or about April 4, 2008, in the Western District of Oklahoma,

ANTONIO DJUAN THOMPSON

knowingly and intentionally possessed marijuana, a Schedule I controlled substance.

All in violation of Title 21, United States Code, Section 844(a).

The parties agree that the gun, ammunition and marijuana which are the subject of the Indictment were found in the bedroom at 4619 Creek Court in Oklahoma City, the residence where Defendant was arrested on April 4, 2008.   The parties do not dispute that Defendant was arrested pursuant to a  warrant issued by the District Court of Oklahoma County on a charge of robbery with a firearm after former conviction of a felony.

At trial, the Court heard the testimony of Oklahoma City Police Department ("OCPD") officers Matthew McRorie, Kenneth Rambo, David Roberts, and Jeffrey Hauck; all are assigned to the OCPD Springlake division.  The Court also heard the testimony of Detective Bryn Carter of the OCPD Robbery Unit ("Robbery Unit").   Pursuant to the parties' stipulations, the testimony of two witnesses was admitted by affidavit. The affidavit and attached Firearms Examination Report of OCPD Firearm and Toolmark Examiner Ronald L. Jones was admitted as government Exhibit 8; the affidavit and attached examination report of OCPD Forensic Chemist Matthew Scott was admitted as government Exhibit 9.  Defendant did not call witnesses or offer exhibits at trial.

Prior to trial, Defendant moved to suppress the gun, ammunition, and marijuana, arguing that

the evidence was improperly obtained because the arresting officers unlawfully entered the residence at 4619 Creek Court and unlawfully searched the premises. The Court conducted an evidentiary hearing and, on October 10, 2008, entered its Order [Doc. No. 29] denying the motion to suppress; the Court found that the arresting officers had a reasonable belief that Defendant was residing at 4619 Creek Court and a reasonable belief that he was at that location at the time of their entry.

In his brief in support of the motion to suppress, Defendant referred to a statement or statements he made at the time of his arrest and prior to an advisement of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  He also indicated a post-*Miranda* statement was made. Defendant did not mention the statements during the motion to suppress hearing; however, upon inquiry by the Court, the parties agreed that, pursuant to *Jackson v. Denno,* 378 U.S. 368 (1964), the Court should conduct a hearing to determine the voluntariness of the statements.  After Defendant waived a jury trial, the parties agreed that evidence regarding the voluntariness of the statements should be presented during the non-jury trial and that the Court would include a ruling on voluntariness in its decision on the merits[2].

Because Defendant's statements to OCPD officers, if admissible, contain admissions which may impact the government's proof, the Court will consider the voluntariness of those statements before considering the other evidence.

## II.  Voluntariness of Defendant's statements:

The evidence establishes that Defendant made two inculpatory statements to OCPD officers:

---

[2]*In a non-jury trial, a separate* Jackson v. Denno *hearing is not required.* Allen v. McCotter, *804 F.2d 1362, 1364 (5th Cir. 1986).  "*Jackson *specifically noted that its holding did not question procedures whereby 'the judge hears the confession evidence himself, resolves evidentiary conflicts, and gives his own answer to the coercion issue.'"* Allen, *804 F.3d at 1364 (quoting* Jackson, *378 U. S.  at 378 n. 8 ).*

1) a statement at the location of his arrest, 4619 Creek Court, before he was advised of his *Miranda* rights; and 2) a statement to OCPD Robbery Unit detectives after he was advised of his *Miranda* rights and executed a written waiver of those rights.  In the first statement, Defendant said the gun and ammunition belonged to him; in the second statement, he said he owned the gun, the ammunition, and the marijuana.

Defendant contends these statements must be excluded from evidence because they were made after the officers unlawfully entered the house and involve items which were obtained in an allegedly unlawful search.  Defendant concedes, however, that he cannot prevail on this argument if the entry was lawful.  At trial, he renewed his motion to suppress the evidence on the grounds that the entry and subsequent search were unlawful; the Court again denied the motion.  Because the Court has ruled that the entry by the officers was lawful, Defendant's statements cannot be excluded on that basis.

However, to admit the statements into evidence, the Court must find that they were voluntary.  The voluntariness of a confession must be determined from the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. *Arizona v. Fulminante*, 499 U.S. 279, 286 (1990); *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973);  *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998).  Relevant factors include the age, intelligence, education, physical and mental characteristics of the suspect as well as the length of the detention and questioning, the use of physical punishment, whether *Miranda* safeguards were administered, and the location of the interrogation.  *Lucero*, 133 F.3d at 1311.  The burden is on the government to demonstrate that an admission or confession is voluntary. *United States v. Dowell*, 430 F.3d 1100, 1107 (10th Cir. 2005).  The government must satisfy that burden by a preponderance

of the evidence. *United States v. Morris*, 287 F.3d 985, 989 (10th Cir. 2002). "The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1153 (10th Cir.) (quotation omitted), *cert. denied*, ___ U.S. ___, 127 S.Ct. 692, 166 L.Ed.2d 536 (2006).

With respect to Defendant's pre-*Miranda* statement, a confession is generally inadmissible if it was made as a result of an improper custodial interrogation conducted without a prior *Miranda* warning. "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Interrogation encompasses "not only questioning but 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Rambo*, 365 F.3d 906, 909-10 (10th Cir. 2004) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

Defendant's first statement must be viewed in the context of the evidence concerning his arrest at 4619 Creek Court. The evidence establishes that Officers Roberts, Rambo, and Hauck, accompanied by Officer Scott Wright, entered the residence at approximately 7:30 a.m. on April 4, 2008 to execute the arrest warrant for Defendant; they did so after obtaining information that Defendant resided at 4619 Creek Court and information that he was present there at the time of their entry.[3] After knocking on the door and announcing that they were police officers, Officer Roberts

---

[3] *Officers McRorie and Rambo testified at trial that Defendant had been named as a suspect in the robbery as early as January, 2008 and that they had attempted to locate him since that time. Their trial testimony in this regard was the same as that offered during the evidentiary hearing on Defendant's motion to suppress. That testimony is discussed in detail in the Order denying the motion [Doc. No. 29], which is incorporated as though fully set forth herein.*

testified that a woman, later identified as Elivia Tolbert, answered the door. The officers testified that, when asked if Defendant was there, Ms. Tolbert turned her head and looked behind her; Officer Roberts interpreted this as an affirmative response, and entered the residence.  Accompanied by Officers Rambo and Wright, Officer Roberts found Defendant and his girlfriend, Letitia Harris, asleep in a bedroom at the rear of the house.  Officer Hauck remained with Ms. Tolbert and Ms. Harris's daughter in another bedroom.

Officers Roberts and Rambo both testified that  Defendant was handcuffed by  Rambo, and advised that he was under arrest.  Defendant was naked, and he asked Officer Roberts to retrieve clothing for him; he told Officer Roberts that his underwear was in the bedroom dresser.  Other items of men's clothing were in the bedroom.

According to Officer Roberts, because the bedroom was dark when they first entered, the officers turned on the overhead light. While Officer Rambo was handcuffing Defendant, Roberts observed an open closet  a few feet from the bed where Defendant had been sleeping.  Roberts saw a gun on the closet shelf, and the attached ammunition clip extended so that the gun was in plain view.  He identified the gun admitted as government Exhibit 13 as the gun he saw on the closet shelf;  When another officer removed the gun from the closet shelf, a box of ammunition was found on the  shelf; the ammunition was admitted as government Exhibit14.[4]

Officers Roberts and Rambo also testified that both saw marijuana in plain view in the bedroom.  Officer Roberts testified that he was present and heard Officer Wright obtain Ms. Harris's

---

[4]*Photographs of the ammunition and the gun were admitted into evidence as government Exhibits 2 and 3, respectively.*

verbal consent to search the premises.  During the search, the officers found a safe in the closet; Roberts testified that the safe contained a large amount of cash.  The officers also found a Western Union receipt regarding money received by Ms. Harris, and a Cox Communication Bill showing Defendant's name and the 4619 Creek Court address.  The Western Union receipt and the Cox bill were admitted as government Exhibits 4 and 5, respectively.[5]

According to Officer Roberts, the gun, ammunition, marijuana, and all items retrieved from 4619 Creek Court were marked and placed in envelopes.  They were booked in to the OCPD property room by Officer Wright.

Officer Roberts also testified that, while he and Officer Wright were in the living room of the residence at 4619 Creek Court, they discussed the items found in the bedroom.  Defendant was in the living room when this conversation occurred.  According to Roberts, he and Officer Wright verbally listed the items found, including the gun, the ammunition, and the marijuana.  Defendant, who heard this conversation, then stated that the gun and ammunition belonged to him.  Officer Roberts denied that Defendant's statement was made in response to a question by any police officer. Officer Rambo, who was also present, testified that he heard Defendant say the gun and ammunition belonged to him; he did not recall hearing any officer ask Defendant about the gun.

The circumstances surrounding Defendant's statement establish that he was in custody at the time he made the statement;  he was handcuffed and clearly was not free to leave, and had been told he was under arrest.  However, the evidence does not support a conclusion that his statement regarding ownership of the gun and ammunition was made in response to any questioning by the

---

[5]These items were received subject to any evidence going to the existence or validity of consent to search the 4619 Creek Court residence.  Officer Roberts testified that Ms. Harris provided verbal consent; no contradictory evidence was submitted during trial.  In any event, although government Exhibits 4 and 5 were admitted, they are of limited probative value and are not relied upon by the Court in connection with this Order and Judgment.

officers.  Nor is there  evidence  suggesting  that Defendant was threatened or that the officers utilized any coercive tactics to elicit an incriminating statement from him.  The record reflects that, at the time of his statement, Defendant was 25 years old, and had been arrested on several previous occasions.  There is no evidence that he was mentally impaired.  Finally, there is no evidence that, after admitting ownership of the gun and ammunition, Defendant was asked any other questions while at the residence or at any time prior to being advised of his *Miranda* rights.

Based on the evidence, the Court concludes by a preponderance of the evidence that Defendant's admission that he owned the gun and ammunition was not the result of improper custodial interrogation.  Rather, the evidence suggests that he made the statement spontaneously and that it was a voluntary statement.

Defendant's second statement was made at the OCPD robbery unit, after Defendant was advised of his *Miranda* rights and after he had executed a written waiver of those rights.  According to the evidence, after arresting Defendant, Officer Rambo telephoned Detective Bryn Carter, the Robbery Unit detective in charge of the investigation on which Defendant's arrest warrant was based.  Detective Carter directed Rambo to transport Defendant to Carter's office at the Robbery Unit; Officer Rambo did so.

Detective Carter testified that, upon arrival at the Robbery Unit,  Defendant was taken to an interview room, his handcuffs were removed, and he was given a soft drink.  Detective Carter testified that he advised Defendant of his rights by reading a printed "Miranda Advice of Rights" form which is the standard form utilized by the OCPD.  A copy of the form executed by Defendant was admitted into evidence as government Exhibit 6.

According to Detective Carter, it is his practice to read to an arrestee each of the five

enumerated rights listed on the form, then ask if the individual understands each of the rights; Detective Carter writes the individual's answer on the form, and then reads the question asking the individual if, having these rights in mind, he wishes to talk to the officer without an attorney. Detective Carter then writes the individual's response on the form. According to Detective Carter, he next asks the individual to review the written form, and to initial the written responses if they are correct; he then asks the individual to read aloud the section of the form entitled "Waiver of Rights," to sign it, and print his name.

Detective Carter testified that Defendant's interview was videotaped. The videotape was admitted as government Exhibit 7, and was viewed during the trial. The videotape shows that Detective Carter followed his standard procedure when interviewing Defendant. Prior to reading the Advice of Rights, he asked Defendant if he could read, write, and do basic math; Defendant answered affirmatively. He asked Defendant if he had been drinking or had taken any drugs or medication; Defendant answered, "No." The videotape shows that Defendant was not handcuffed during the interview. Robbery Unit Detective Mike Homan also participated in the interview, but none of the officers involved in Defendant's arrest at 4619 Creek Court were present.

The videotape also shows that Defendant listened attentively when Detective Carter read the Advice of Rights, and he responded affirmatively when asked if he understood each of those rights. He also answered affirmatively when asked if, having those rights in mind, he wished to talk to the detectives without an attorney present. Detective Carter then showed Defendant the written Advice of Rights, asked him to review it and to initial the answers written by Detective Carter if they correctly reflected Defendant's verbal responses. Defendant initialed both written answers on the form. Government Exhibit 6.

At the request of Detective Carter, Defendant then read aloud the Waiver of Rights section of the form; he read clearly and without hesitation, and he exhibited no difficulty in doing so. When asked to review the form, print his name, and write his signature, he again did so without hesitation; the form shows that both his printed name and his signature are legible. *Id.*

When asked if he knew why he had been arrested, Defendant stated that he understood he was accused of armed robbery, but he adamantly denied that accusation. He told the officers he was 25 years old, and admitted to having prior felony convictions for assault and battery and drug charges. He said that he understood the present gun charge was very serious.

The majority of the 45-minute interview involved the robbery charge. Because the allegations regarding that charge are not at issue in this case, the Court need not detail the questions and answers documented on the videotape. However, Defendant's demeanor during the interview is relevant to the issue of voluntariness. Defendant appeared alert, cooperative, and responsive during the interview. He answered all questions posed by Detective Carter without hesitation. He provided more than simple "yes" or "no" answers, volunteered information, and offered detailed answers.

During the latter part of the interview, Detective Carter noted that the arrest report showed that the officers had found a gun and ammunition at the residence where Defendant was arrested. Defendant acknowledged that fact, and identified the gun as a Ruger. When asked who owned the gun, Defendant said the gun belonged to him, that he had bought it about a week earlier, and that he bought it on the street for $100. Defendant knew that, because he was a convicted felon, he was not supposed to have a gun; he bought the gun for protection after someone attempted to shoot him. He added that he purchased ammunition for the gun at a Wal-Mart store near Interstate 35 in south

10

Oklahoma City.  He described the ammunition, and said it was not hollow point.  According to Defendant, he had not used the gun.  When Detective Carter asked if he had removed the serial number, Defendant denied doing so, but added that  he noticed the serial number had been removed. He did not know if the gun was stolen, but he said that is a risk when you buy a gun on the street.

When asked about the marijuana found at 4619 Creek Court, Defendant stated that it belonged to him and was for his personal use.  Detective Carter asked him about the safe found in the closet at that residence and the cash in the safe.   Defendant estimated there was about $8,000 to $9,000 in the safe;  half of it belonged to him and half belonged to his girlfriend, Letitia Harris. He said he got the money from selling two cars.

When asked about Ms. Harris, Defendant stated she is the mother of his three-year-old daughter; he said she leased the house at 4619 Creek Court and that he stayed at the house off and on, but his name is not on the lease.  When not at 4619 Creek Court, he stated that he resides at 2213 N. Kelham.

Detective Carter testified that, when he interviewed Defendant and obtained these statements, he did not know that Defendant had made any statement to the arresting officers at 4619 Creek Court.

The videotape and the testimony of Detective Carter establish that Defendant was properly advised of his *Miranda* rights and that he knowingly and voluntarily agreed to waive those rights. The videotape shows no evidence that Defendant lacked the education or mental capacity to understand his rights and the consequences of waiving those rights. Defendant was articulate and alert, and he did not exhibit any difficulty in understanding the questions. He was not questioned until the waiver was executed.  The videotape establishes that the detectives did not use any coercive

techniques in questioning Defendant; there were no threats, and no abusive tactics were utilized. Defendant did not appear fearful or threatened at any time; he was cooperative. His responses to questions regarding the gun, the ammunition, and the marijuana were specific and direct; he answered the questions calmly and in considerable detail.

The Court concludes that Defendant's statement following the advisement and waiver of his *Miranda* rights was voluntary and is admissible. Even if the Court had determined that Defendant's pre-*Miranda* statement at 4619 Creek Court was inadmissible, the subsequent statement made after he waived his *Miranda* rights may be admitted if the evidence establishes that Defendant knowingly and voluntarily waived his rights. "[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Oregon v. Elstad*, 470 U.S. 298, 318 (1985). The question is whether any subsequent waiver of *Miranda* rights was voluntary, knowing, and intelligent. *Id.* In this case, the evidence establishes that Defendant's subsequent waiver satisfies these requirements.

This conclusion is not impacted by *Missouri v. Seibert*, 542 U.S. 600 (2004), which held that *Elstad* does not permit officers to engage in an improper "two step questioning technique" designed to avoid *Miranda*. 542 U.S. at 604. In *Seibert*, the Court considered the admissibility of a post-*Miranda* confession resulting from a procedure in which pre-*Miranda* admissions were elicited, a *Miranda* warning was then provided, and the officers resumed questioning and obtained the same admission which resulted from *pre-Miranda* interrogation. *Id.* The Court found that use of such a procedure constitutes an improper attempt to undermine *Miranda*, and is not permitted by *Elstad*. Furthermore, the Court found that both statements obtained in such a procedure may be inadmissible because the "practical and legal significance" of the *Miranda* warnings would be obscured. 542

12

U.S. at 620.

To determine whether an improper "two-step questioning technique" occurred, the plurality in *Seibert* held that courts should consider 1) the completeness and detail of the questions and answers in the first round of interrogation; 2) the overlapping content of the two statements; 3) the timing and setting of the first and the second; 4) the continuity of police personnel; and 5) the degree to which the interrogator's questions treated the second round as continuous with the first.  542 U.S. at 615.  In a concurring opinion, Justice Kennedy criticized this test as too broad, and found that, unless "the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning," courts should follow "the principles of *Elstad*."  542 U.S. at 622 (Kennedy, J., concurring).  Although the Tenth Circuit discussed both the plurality view and Justice Kennedy's approach in *Carrizales-Toledo*, 454 F.3d 1142 (10th Cir.), *cert. denied,* __ U.S.__, 127 S.Ct. 692, 166 L.Ed.2d 536 (2006), it has not expressly adopted either test; however, the majority of circuits considering the issue have adopted Justice Kennedy's approach[6].

The Court concludes that, in this case, *Seibert* does not render Defendant's statements inadmissible under either view.  Under Justice Kennedy's test, the Court considers whether the evidence shows that the officers used a two-step interrogation technique in a "calculated way" designed to undermine *Miranda*.  There is no evidence that the officers in this case engaged in such tactics.  In fact, the officers who arrested Defendant and heard his pre-*Miranda* statement were not even present when Detective Carter advised him of his *Miranda* rights and questioned him about

---

[6]*See* United States v. Ollie, *442 F.3d 1135, 1142 (8th Cir.2006);* United States v. Williams, *435 F.3d 1148, 1158 (9th Cir.2006);* United States v. Narrowing, *426 F.3d 221, 231-32 (3d Cir.2005);* United States v. Lashburn, *406 F.3d 303, 309 (4th Cir.2005);* United States v. Stewart, *388 F.3d 1079, 1086-87 (7th Cir.2004).  In an unpublished decision, the Fifth Circuit cited these decisions and applied the Justice Kennedy view.* United States v. Hernandez, *200 Fed. Apex. 283, 286 n. 1 (5th Cir. Sept.12,2006).*

the items found at 4619 Creek Court.  There is no evidence that any of the arresting officers told Carter about Defendant's statement, and  Carter testified that he was not aware of that statement. The Court concludes that, under Justice Kennedy's test, Defendant's statements in this case are admissible.

Under the *Seibert* plurality test, the initial factor is the completeness and detail of the questions and answers in the first round of interrogation.  There is no evidence that Defendant was asked any questions at the location of his arrest.  Even if a question had been posed to him, however, his statement at the residence was not complete and detailed; it was limited to a direct statement that he owned the gun and ammunition.   There is no evidence that he was asked other questions after making that statement.

Applying the second *Seibert* plurality factor, the only overlapping content in the two statements is Defendant's admission of ownership.  In the first statement,  he provided no additional details regarding his purchase of the gun and the ammunition, or any of  the other information he later provided to Detective Carter.  Defendant said nothing about the marijuana. When questioned by Detective Carter, however, he admitted ownership of the gun, explained  how he purchased it, why he purchased it, and the amount he paid for the gun.   Defendant also provided detailed additional information regarding his purchase of the ammunition.  He also said the marijuana belonged to him and was intended for his personal use.  Because of the difference in the content of the two statements, the Court does not find dispositive the fact that both included an admission that Defendant owned the gun and the ammunition.

 The third *Seibert* plurality factor is the timing and setting in which the two statements were made.  In this case, the two statements occurred on the same morning; however, they were made at

two different locations. While the first was made shortly after he was handcuffed, the second was not made until he was transported to the Robbery Unit and involved different personnel.

In fact, the fourth *Seibert* plurality factor, continuity of police personnel, is absent in this case. The evidence establishes that none of the arresting officers participated in the interview at the Robbery Unit, and no officer who heard Defendant's statement at 4619 Creek Court was present at the Robbery Unit. The videotape establishes that the Robbery Unit detectives were the only officers present during the interview. Furthermore, Detective Carter testified that he did not know Defendant had made a statement at 4619 Creek Court, and there is no evidence contradicting his testimony.

The final *Seibert* plurality factor is also not supported by the evidence because Detective Carter did not refer to Defendant's prior statement when he interviewed him. The videotape shows no evidence suggesting that Carter's questions were in any manner connected to Defendant's prior statement. There is no evidence to support a finding that Detective Carter treated his questions as a continuation of the prior custodial setting.

The Court concludes that, although Defendant made inculpatory statements prior to and after being advised of his *Miranda* rights, the evidence does not support a finding that the police officers intentionally sought to undermine *Miranda* or that the voluntariness of Defendant's subsequent post-*Miranda* statement was impacted under these circumstances. Therefore, the concerns expressed in *Seibert* are not present in this case. The Court finds and concludes by a preponderance of the evidence that Defendant's statements are voluntary and admissible.

III. The government's burden of proof:

A. Count 1: Possession of a firearm or ammunition after conviction of a felony:

To find Defendant guilty of the crime proscribed by 18 U.S.C. § 922(g)(1), the Court must find that the government has proved each of the following elements beyond a reasonable doubt: 1) Defendant knowingly possessed a firearm or ammunition; 2) Defendant was convicted of a felony before he possessed the firearm or ammunition; and 3) before Defendant possessed the firearm or ammunition, they had moved at some time in interstate commerce. *United States v. Norman*, 388 F.3d 1337, 1340 (10th Cir. 2004).

The element of "possession" required by § 922(g)(1) may be satisfied by showing either actual or constructive possession. *United States v. Norman*, 388 F.3d 1337,1340 (10th Cir. 2004) (citing *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994)). "Constructive possession occurs when a person 'knowingly holds ownership, dominion or control over the object and premises where it is found.'" *Norman*, 388 F.3d at 1340 (quoting *United States vs. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999)). "In cases of joint occupancy, where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband." *Norman,* 388 F.3d at 1340-41(quoting *Mills*, 29 F.3d at 549). The "requisite nexus is established where there is some evidence to support the plausible inference that defendant had knowledge of and access to the firearms." *Lazcano-Villalobos*, 175 F.3d at 843; *United States v. Hien Van Tieu*, 279 F.3d 917, 921 (10th Cir.2002) . "Thus, in the joint occupancy context, 'knowledge and access are required to prove that the defendant knowingly held the power to exercise dominion and control over the firearm.'" *Norman*, 338 F.3d at 1341(quoting *United States v. Colonna*, 360 F.3d 1169, 1179 (10th Cir. 2004)). "While caution must be taken that the conviction not be obtained by piling inference on inference, an inference of constructive possession is reasonable if the conclusion flows from

logical and probabilistic reasoning." *Colonna*, 360 F.3d at 1179; *Lazcano-Villalobos*, 175 F.3d at 843.

Because possession of a firearm or ammunition after conviction of a felony is a general intent crime, the government need not establish that Defendant possessed a firearm for an improper or illegal purpose; his motive for possessing the weapon is "irrelevant." *United States v. Baker*, 508 F.3d 1321, 1324 (10th Cir. 2007) (citing *United States v. DeSoto,* 950 F.2d 626, 632 (10th Cir. 1991)). Nor is the government required to prove that Defendant actually owned the firearm in question or that he intended to exercise his dominion or control over the firearm at issue; "mere possession is enough" if the evidence shows that he has dominion or control by virtue of joint occupancy of the premises, knowledge of the firearm, and access to the firearm. *Colonna*, 360 F.3d at 1179.

Proof that a defendant "knowingly" possessed a firearm or ammunition in violation of § 922(g)(1) is established where the evidence shows "proof of knowledge of facts that constitute the possession." *Baker*, 508 F.3d at 1325. "In other words, by prohibiting knowing possession, the statute does not invite inquiry into the reason" the defendant possessed the firearm, as long as the defendant knew it was a firearm. *Id.* (citing *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999) (Section 922(g) imposes criminal liability on a felon in possession of a firearm "unless that felon truly did not know that what he possessed was a firearm.")

In this case, the government has met its burden of proof beyond a reasonable doubt that Defendant had actual possession of the gun and the ammunition. In his post-*Miranda* statement to Detective Carter, Defendant specifically stated that he owned the gun and the ammunition. He identified the gun as a Ruger; he admitted he purchased the gun on the street for $100, and he later purchased ammunition at a Wal-mart near I-35 in south Oklahoma City. He told Detective Carter

he bought the gun for protection.  He acknowledged that, as a convicted felon, it was unlawful for him to possess a gun.

Even if Defendant had not admitted actual possession of the gun and ammunition, the evidence is sufficient to establish, beyond a reasonable doubt, that he had constructive possession of these items.   The evidence shows that the gun was on a shelf in an open closet a few feet from the bed where Defendant was found; the ammunition was located with the gun.  Although the residence where it was found was leased by Letitia Harris, the evidence shows that Defendant regularly spent the night there, and in the bedroom where the gun was located.  Ms. Harris is the mother of Defendant's daughter, who also resided at 4619 Creek Court.  When Defendant was arrested, he asked the officers to obtain clothing for him, and he specifically asked them to obtain underwear from a dresser inside the bedroom.  In his statement to Detective Carter, Defendant also said he owned half of the cash found in a safe in the bedroom closet.

The Court concludes that the evidence establishes beyond a reasonable doubt that Defendant knowingly possessed the firearm and ammunition at issue.

The undisputed evidence also establishes beyond a reasonable doubt that, at the time of possession, Defendant had been previously convicted of felony offenses.  Defendant did not object to the introduction of government Exhibits 10, 11, and 12, which are certified copies of three judgements and sentences entered in the District Court of Oklahoma County, Oklahoma.  Government Exhibit 10 establishes that, on December 20, 2006, Defendant was sentenced, after entering a guilty plea, to a charge of Assault with a Dangerous Weapon; he received a suspended sentence of ten years.  Government Exhibit 11 reflects that, on that same date, he received a ten-year suspended sentence after pleading guilty to a charge of Possession of a Controlled Dangerous

Substance (Cocaine) with Intent to Distribute.  As reflected in  government Exhibit 12, Defendant was also sentenced on December 20, 2006 to a ten-year suspended sentence on a separate charge of Possession of a Controlled Dangerous Substance (Cocaine) with Intent to Distribute. The three exhibits reflect that these sentences were concurrent, and Defendant was placed on probation.

The evidence also establishes beyond a reasonable doubt that the firearm had been transported in interstate commerce prior to coming into Defendant's possession.  The parties stipulated to the admission of the affidavit of OCPD Firearm and Toolmark Examiner Ronald L. Jones.  Government Exhibit 8.  Accompanying his affidavit is a Firearms Examination Report prepared by Jones; it states that the firearm at issue was manufactured in Arizona.  *Id.*  He further reports that the ammunition consisted of  a 30-round magazine containing 13 rounds of 9mm Luger caliber ammunition, of which twelve rounds were CCI brand, and one round was S&B brand.  Government Exhibit 8.  Jones further states that the CCI ammunition was manufactured in Idaho and the S&B ammunition was manufactured in the Czech Republic.  *Id.*

Defendant does not dispute this evidence.  Therefore, the government has satisfied its burden, beyond a reasonable doubt,  that both the gun and the ammunition found in Defendant's possession had moved in interstate commerce prior to coming into Defendant's possession.

The Court finds that the government has satisfied its burden of proving each of the elements of Count 1 of the Indictment.  The evidences establishes, beyond a reasonable doubt, that  Defendant knowingly possessed a Ruger semi-automatic pistol, model No. P-85, and 13 rounds of 9 mm ammunition, that the same had previously traveled in interstate commerce, and that Defendant possessed these items after having been convicted of a felony, as proscribed by 18 U.S.C. § 922(g)(1).

B. Count 2: Possession of marijuana:

19

To find Defendant guilty of the crime charged in Count 2, possession of a detectable amount of marijuana in violation of 21 U. S. C. § 844(a), the Court must find that the government has proven beyond a reasonable doubt that Defendant knowingly or intentionally possessed a mixture or substance containing a detectable amount of marijuana.  The statute does not require that a specific amount be possessed, but proscribes possession of a detectable amount.

As in the case of the firearm possession charge,  possession for purposes of a drug offense may be actual or constructive.  *United States v. Harris*, 369 F.3d 1157, 1163 (10th Cir. 2004).  To prove constructive possession, the government must show that "Defendant knowingly held ownership, dominion or control over the object and premises where the contraband was found."  *Id.; see also United States v. Montgomery*, 468 F.3d 715, 719 (10th Cir. 2006).  In a drug possession charge, constructive possession requires evidence "supporting a plausible inference of knowledge and access to the contraband or 'some connection or nexus...linking the defendant to the contraband.'" *United States v. Bowen*, 437 F.3d 1009, 1018 (10th Cir. 2006) (quoting *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998)).

Proof of knowledge with regard to drug possession is governed by the same standards applicable to knowing possession of a firearm.  *Bowen*, 437 F.3d at 1018.  Thus, the government is not required to prove the reason Defendant possessed the marijuana, but must show only that he knew it was marijuana.  *See, e.g., Baker*, 508 F.3d at 1325.

In his post-*Miranda* statement in this case, Defendant admitted to Detective Carter that the marijuana found in plain view in the bedroom at 4619 Creek Court belonged to him and that it was for his own personal use.  Therefore, the element of actual possession is established.  As in the case of possession of the gun and ammunition, however, even if actual possession had not been shown,

the evidence is sufficient to show that Defendant constructively possessed the marijuana.  The undisputed evidence establishes that there were partially smoked marijuana "roaches" found on the floor and the night table next to the bed where Defendant was found.  The officers also found near the bed the material described as a green leafy substance which Officer Roberts believed to be marijuana.  The evidence with regard to Defendant's connection to 4619 Creek Court and the bedroom of that residence is sufficient to establish, at a minimum, a "plausible inference of knowledge and access to the contraband."  *Bowen*, 4347 F.3d at 1018.

The evidence also establishes beyond a reasonable doubt that some of the substances found were marijuana.  The parties stipulated to the admission of the affidavit executed by OCPD Forensic Chemist Matthew Scott, who prepared an Examination Report reflecting his analysis of the substances found in the bedroom at 4619 Creek Court.  Government Exhibit 9.  According to Scott, he examined three plastic bags containing green leafy substances and one bag containing hand-rolled cigarette butts and loose charred plant material; he reported that two bags, one containing .41 gram of a green leafy substance and another containing 0.35 gram of a green leafy substance, were cannabis or marijuana.  *Id.*  The bag containing 9.7 grams of cigarette butts and loose charred material also testified positive as cannabis or marijuana;  no marijuana was detected in the fourth bag.  Government Exhibit 8.

Defendant offered no evidence to dispute Scott's findings.  Accordingly, the Court concludes that the government has satisfied its burden of proving beyond a reasonable doubt that the material possessed by Defendant consisted of a detectable amount of marijuana, including a bag containing .41 gram, another containing .35 gram, and a third containing 9.7 grams of cigarette butts and loose charred material.

Accordingly, the Court concludes that the government has satisfied its burden of proving, beyond a reasonable doubt, the charge in Count 2 that Defendant possessed marijuana in violation of 21 U. S. C. § 844(a).

IV.Conclusion:

In accordance with the foregoing, the Court concludes that the government has satisfied its burden of proof with regard to both Count 1 and Count 2 of the Indictment.  Therefore, the Court finds Defendant Antonio Djuan Thompson guilty of the charges set forth in Count 1 and Count 2 of the Indictment.

IT IS SO ORDERED this __7th___ day of November, 2008.


_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE